WMN:SLT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M10- 329

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

MANUELA BERRIO-GALLO,
    also known as "Christina
    Berrio" and "Christina
    Maria Berrio-Restrepo," and
CHRISTIAN ERWIN,
    also known as "Albeiro
    Puerta," "Alberto Puerto,"
    and "Christian Clavijo,"

          Defendants.

**Filed Under Seal**

AFFIDAVIT IN SUPPORT OF
ARREST WARRANTS

(T. 18, U.S.C. §§ 963 and
  960(b)(1)(A))

- - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

        CHRISTOPHER H. MILLER, being duly sworn, deposes and states that he is Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such:

        Upon information and belief, on or about and between March 2009 and June 2009, within the Eastern District of New York and elsewhere, the defendants MANUELA BERRIO-GALLO, also known as "Christina Berrio" and "Christina Maria Berrio-Restrepo," and CHRISTIAN ERWIN, also known as "Albeiro Puerta," "Alberto Puerto," and "Christian Clavijo," together with others, did knowingly and intentionally conspire to import a controlled substance into the United States from a place outside thereof, which offense involved 1 kilogram or more of a substance containing heroin, a Schedule I

controlled substance, in violation of Title 21, United States Code, 952(a).

(Title 21, United States Code, Sections 963 and 960(b)(1)(A))

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I, Christopher Miller, am a Special Agent with the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such. I have been a Special Agent with the DEA for approximately thirteen years and am currently assigned to the DEA Strike Force ("Strike Force"). During my tenure with the DEA, I have participated in numerous narcotics investigations during the course of which I have conducted physical and wire surveillance, executions of search warrants, and reviews and analyses of numerous taped conversations and records of drug traffickers. Through my training, education and experience -- which has included numerous instances of debriefing cooperating drug traffickers, monitoring wiretapped conversations of drug traffickers, conducting searches of locations where drugs and money have been found, and conducting surveillance of individuals engaged in drug trafficking -- I have become familiar with the manner in which illegal drugs are imported and distributed, the method of

_____

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

-2-

payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2.      Among other duties, I have been participating in an investigation relating to the drug trafficking activities of MANUELA BERRIO-GALLO, also known as "Christina Berrio" and "Christina Maria Berrio-Restrepo," and CHRISTIAN ERWIN, also known as "Albeiro Puerta," "Alberto Puerto," and "Christian Clavijo." Since at least March 2009, the Strike Force, DEA agents in Boston, Massachusetts and DEA/Colombia, with the assistance of the Colombian National Police ("CNP"), have been investigating an organization involved in heroin trafficking based in Medellin, Colombia and Queens, New York. The investigation has revealed the existence of a Medellin-based organization responsible for sending kilogram-quantities of heroin through couriers to the New York area.   The investigation further revealed that Gustavo Romer Garcia-Roa was one of the individuals responsible for finding couriers for the organization.

3.      During the course of the investigation, DEA agents interviewed an individual who was provided reliable information corroborated by independent evidence (the "CS").   During the interview, the CS informed the agents that, for a period of approximately five years, the CS had worked as a courier for Gustavo Romer Garcia-Roa, transporting heroin from Colombia to the New York area.

-3-

4.     In or about March 2009, under the supervision of the DEA agents, the CS placed a telephone call to Gustavo Romer Garcias-Roa and offered to again act as a courier.  Gustavo Romer Garcias-Roa then requested that the CS travel to Colombia. Additionally, during the conversation between the CS and Gustavo Romer Garcias-Roa in regards to the planning and coordination of the CS' travel, Gustavo Romer Garcias-Roa indicated that the heroin was to be delivered to an individual located in the New York City area.

5.     On or about April 15, 2009, at the direction of DEA agents, the CS traveled to Cartagena, Colombia, where the CS was met and interviewed by DEA agents there.  The Cartagena DEA agents provided the CS with a cellular telephone which, with the CS's consent, CNP officers monitored.    Monitoring of the stated telephone started on April 16, 2009, and continued throughout the CS' stay in Colombia.  The CS thereafter had several conversations with Gustavo Romer Garcia-Roa, during which conversations, Garcia-Roa instructed the CS to travel to Medellin to meet with Gustavo-Roa and "Christina," later identified as MANUELA BERRIO-GALLO, who would be providing the CS with the heroin to transport to New York.  During these and subsequent conversations, the CS also learned that the intended recipient of the heroin was CHRISTIAN ERWIN, MANUELA BERRIO-GALLO's husband and that the person

who would be transporting the CS in Colombia was the father of MANUELA BERRIO GALLO's deceased first husband.

6.     Thereafter, during the course of court-authorized telephone interceptions in Colombia, CNP officers intercepted Gustavo Romer Garcia-Roa and MANUELA BERRIO-GALLO discussing the CS's arrival and the upcoming transportation of heroin.  On April 17, 2009, CNP officers intercepted Gustavo Romer Garcia-Roa and MANUELA BERRIO-GALLO discussing the CS's arrival and the fact that they were going to pick the CS up at the airport.

7.     On April 17, 2009, CNP officers established surveillance at the Jose Maria Cordoba International Airport in Rionegro, Colombia.   The CNP officers observed Gustavo Romer Garcia-Roa and two associates arrive at the airport, meet with the CS and enter a Colombian taxi driven by a Colombian male later identified as the ex-father-in-law of MANUELA BERRIO-GALLO.  Later the same day, MANUELA BERRIO-GALLO and the CS were intercepted making arrangements to meet at the hotel where the CS was staying.

8.     Later on April 17, 2009, CNP officers commenced surveillance at the CS's hotel and observed the taxi described above arrive at the hotel.   Inside the taxi, the CNP officers observed a female later identified as MANUELA BERRIO-GALLO.  Later that day, the agents observed the CS and MANUELA BERRIO-GALLO traveling together in the taxi.

9.    On April 19, 2009, CNP officers observed the CS and MANUELA BERRIO GALLO at a luggage store in Medellin, purchasing a duffle bag-type suitcase.    MANUELA BERRO GALLO had previously explained to the CS that the heroin was dyed black, treated with a chemical used to repel dogs, and wrapped in carbon paper and finally, shrink-wrapped in heavy black plastic.  The bottom of the duffle bag was removed and the heroin was placed in the bottom. The bottom of the duffle bag was then replaced and screwed in.

10.    On April 20, 2009, in the morning hours, the CS met with MANUELA BERRIO-GALLO at BERRIO-GALLO's residence.  The CS has informed me that, while he/she was at BERRIO-GALLO's residence, another individual arrived with the duffle bag, which now contained the heroin.   The CS also informed me that he/she coordinated the delivery with BERRIO-GALLO and her husband, CHRISTIAN ERWIN, who participated in the discussion from his residence in Queens, New York via Skype.  The CS was permitted to see and speak to CHRISTIAN ERWIN via Skype, during which time he provided a contact number for himself and advised that he would pick up the CS in New York.   The CS was provided with the duffle bag containing the heroin.  The CS was then transported directly to the airport in Medellin, Colombia to take a flight to John F. Kennedy Airport in Queens, New York. Prior to boarding the flight to New York, CNP agents removed the duffle bag and replaced it with a similar bag.   CNP agents then conducted a search of the CS's duffle bag (samsonite duffle bag,

-6-

blue and black in color), during which time they located a compressed 29"x14"x1/2" rectangular sheet, black in color, from the bottom of the duffle bag that tested positive for heroin.   The total amount of heroin seized was approximately 2 kilograms.   The heroin was seized and processed by the CNP per their policy and procedure, and a representative sample was provided to Cartagena DEA agents.   Later this same date, CNP officers intercepted the CS and MANUELA BERRIO-GALLO speaking over the telephone.   The CS informed MANUELA BERRIO-GALLO that he/she was on the airplane and was departing for New York.

11.   During the early morning hours of April 21, 2009, Strike Force agents met with the CS at John F. Kennedy International Airport in order to facilitate a meeting between the CS and CHRISTIAN ERWIN, the intended recipient of the heroin. While at the airport and at the direction of Strike Force agents, the CS had several telephone conversations with CHRISTIAN ERWIN relative to meeting in order to turn over the heroin.   The CS was then instructed to walk towards a specific area of the airport.   At this same time, Strike Force agents were conducting surveillance within the airport and observed ERWIN and a female associate arrive in the parking lot outside of the international arrival terminal. These two individuals lingered at the airport and appeared to be waiting for someone to arrive and were in the location to which the CS had been directed.   Agents then directed the CS to walk towards

-7-

CHRISTIAN ERWIN, who was now standing next to a vehicle with the trunk opened. As the CS approached ERWIN and was in his line of sight, agents approached the CS and facilitated a mock arrest. Immediately upon seeing the mock arrest of the CS, CHRISTIAN ERWIN and his female associate entered their vehicle and departed the airport. The CS has informed Strike Force agents that the male he/she observed outside the airport, CHRISTIAN ERWIN, was the person to whom he/she had previously been introduced as the person who was to receive the heroin in New York.

12. On April 21, 2009, CNP officers intercepted a series of conversations between MANUELA BERRIO-GALLO and several other individuals. In these conversations, MANUELA BERRIO-GALLO discussed the failure of the CS to arrive and the fact that "Albeiro" (believed to be a reference to CHRISTIAN ERWIN, MANUELA BERRIO-GALLO's husband) was upset with BERRIO-GALLO as a result.

13. On May 17, 2009, CNP officers intercepted conversations which revealed that MANUELA BERRIO-GALLO was traveling to the United States via Mexico. On June 11, 2009, CNP officers intercepted conversations which revealed that MANUELA BERRIO-GALLO had arrived in the United States. Specifically, on June 11, 2009, at approximately 11:17 p.m., and on June 12, 2009 at 10:36 p.m., the CNP intercepted conversations between MANUELA BERRIO-GALLO and her mother which made it clear that MANUELA BERRIO-GALLO was in the United States.

-8-

14. MANUELA BERRIO-GALLO was later observed in New York by Strike Force agents. Specifically, agents determined that MANUELA BERRIO-GALLO was residing at 2518 99th Street East Elmhurst, NY with CHRISTIAN ERWIN. Additionally, on or about August 17, 2009, DEA agents observed MANUELA BERRIO-GALLO walking hand-in-hand down Astoria Boulevard with CHRISTIAN ERWIN.

15. MANUELA BERRIO-GALLO was previously arrested for felony narcotics trafficking on March 24, 2005 in New York. She subsequently pled guilty to a Misdemeanor drug offense. CHRISTIAN ERWIN was arrested on the same date, with MANUELA BERRIO-GALLO, and also charged with felony narcotics trafficking. At the time of his 2005 arrest, ERWIN used the alias "Alberto Puerta."

WHEREFORE, your deponent respectfully requests that the Court issue arrest warrants so that the defendants MANUELA BERRIO-GALLO, also known as "Christina Berrio" and "Christina Maria Berrio-Restrepo," and CHRISTIAN ERWIN, also known as "Albeiro Puerta," "Alberto Puerto," and "Christian Clavijo," may be dealt with according to law.

Your deponent also requests that this affidavit and the accompanying warrants be sealed, except that the DEA may disclose this affidavit and warrants as necessary to effectuate the arrest and arraignment of the defendants.

CHRISTOPHER MILLER
Special Agent
Drug Enforcement Administration

Sworn to before me this
26th day of March, 2010

S| Reyes

UNITED                          UDGE
EASTER                          RK

-10-